**Peggy Ann VETTER, Judgment Creditor,**

v.

**Leo SUBOTNIK, Judgment Debtor,**

v.

**ST. PAUL FIRE & MARINE INSURANCE CO.,**
**Garnishee.**

Civ. No. 3–89–556.

United States District Court,
D. Minnesota,
Third Division.

April 7, 1992.

**1354**

John L. Weyland, Jensen, Weyland & McCloskey, P.A., Brooklyn Park, MN, for judgment creditor.

Timothy P. Tobin, Gislason, Dosland, Hunter & Malecki, Minnetonka, MN, for garnishee.

## ORDER

MAGNUSON, District Judge.

### Introduction

In this action for damages arising out of professional malpractice, judgment creditor, Peggy Ann Vetter ("Vetter") entered into a *Miller–Shugart* agreement with judgment debtor, Leo Subotnik ("Subotnik"). Under the terms of the agreement, Vetter may collect the judgment only from Subotnik's insurer, St. Paul Fire & Marine Insurance Company ("St. Paul"). Vetter now moves the Court to grant summary judgment against St. Paul. St. Paul defends on the grounds that the *Miller–Shugart* agreement between the parties is unenforceable because it is the product of fraud and collusion and because Subotnik breached his duty of cooperation when he entered into the agreement. For the reasons set forth below, the Court will grant plaintiff's motion for summary judgment.

### Facts

Judgment Creditor Vetter is a victim of childhood incest and heinous abuse. Shortly after being raped in college, Vetter sought professional treatment from judgment debtor Subotnik, who was a licensed psychotherapist. During the course of the treatment Subotnik mishandled the phenomena of transference and counter-transference and engaged in a sexual relationship with Vetter.

Vetter then sued Subotnik for professional malpractice, negligence and assault and battery. Subotnik's insurer, St. Paul, refused to acknowledge coverage on any of the claims. St. Paul eventually agreed to provide Subotnik with a defense. However, it did so only under a full reservation of rights to later deny coverage. Following St. Paul's refusal to acknowledge coverage, Vetter and Subot-

nik entered into a *Miller–Shugart* agreement[1] and stipulated to entry of judgment. In this garnishment proceeding, Vetter now seeks summary judgment against St. Paul. St. Paul defends on the grounds that the agreement between Subotnik and Vetter is unenforceable because it is the product of fraud and collusion and because Subotnik breached his duty to cooperate with St. Paul.

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When the moving party has established a prima facie case, the party opposing the motion then has the burden of establishing facts which create a genuine issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, the party opposing the summary judgment motion must produce evidence which "presents a sufficient disagreement to require submission to a jury...." *Id.* at 251–52, 106 S.Ct. at 2511–12. General allegations as to the existence of fact issues are not enough; the party opposing the judgment must demonstrate with specificity that material fact issues exist. *First Nat. Bank v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968), *reh. den.*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968). Because Vetter has established a prima facie case and St. Paul has failed to demonstrate with specificity the existence of material fact issues, the Court will grant Vetter's motion for summary judgment.

A *Miller–Shugart* agreement is enforceable against an insurer if (1) the agreement is reasonable and prudent; (2) the insured did not violate his or her duty to cooperate with the insurer; and (3) the agreement is not the product of fraud or collusion. *Miller v. Shugart*, 316 N.W.2d 729, 733–35 (Minn.1982); *S.G. v. St. Paul Fire & Marine Ins. Co*, 460 N.W.2d 639, 643

---

1. A *Miller–Shugart* agreement is one in which an insured stipulates to a money judgment in favor of a plaintiff and the plaintiff in turn agrees to seek payment only from the insured's insurer.

(Minn.App.1990) *(review denied* Nov. 28, 1990). Furthermore, as a practical matter, the Court must also find coverage for the damages sought. *Brownsdale Coop. Ass'n v. Home Ins. Co.,* 473 N.W.2d 339, 341 (Minn. App.1991) *(review denied* Sept. 25, 1991) (Issue of coverage may be determined by the Court and will not be overturned unless it is clearly erroneous.).

### 1. Agreement was reasonable and prudent.

In determining whether a *Miller–Shugart* settlement is reasonable and prudent, the Court applies an objective test and asks what a reasonably prudent person in the position of the defendant would have done under the circumstances. *Miller,* 316 N.W.2d at 735. Because the test is objective, the Court does not ask whether the defendant believed the settlement to be reasonable at the time he entered into it. Instead, the Court evaluates the facts bearing upon the liability and damage aspects of the plaintiff's claim, as well as the risks of an adverse result at trial and determines whether a reasonably prudent person would have settled under the circumstances. *Id.* In making its determination, the Court is entitled to consider not only customary evidence on liability and damages "but also other evidence, such as expert opinion of trial lawyers evaluating the 'customary' evidence." *Alton M. Johnson Co. v. M.A.I. Co.,* 463 N.W.2d 277 (Minn. 1990).

The Court finds that a reasonably prudent person would have settled under the circumstances. At the time the settlement was being negotiated, Subotnik was represented by counsel who fully informed him of the risks of going to trial. Specifically, Subotnik was told that if the case were to go to trial it was possible that there could be a verdict in excess of his $1,000,000 policy limit.

The Court further finds the settlement reasonable in light of the expert opinions before the Court. Plaintiff submitted affidavits from several attorneys who state that they know of settlements and jury verdicts in similar cases that were far in excess of the one here.

### 2. Insured did not violate duty to cooperate.

St. Paul argues that Subotnik breached his duty to cooperate when he unilaterally settled with Vetter. In making its argument, St. Paul relies on *Buysse v. Baumann–Furries,* 448 N.W.2d 865 (Minn.1989) and *Steen v. Underwriters,* 442 N.W.2d 158 (Minn.App. 1989) and other cases where the insurer acknowledged coverage for some claims but not for others. St. Paul's reliance is misplaced. *S.G. v. St. Paul Fire & Marine Ins. Co.,* 460 N.W.2d at 643 (citation omitted) *(Buysse* and *Steen* line of cases apply only in cases where the insured admits coverage prior to settlement).

"A settlement which is made before an insurer acknowledges coverage is not a violation of the cooperation duty." *Id.* (citing *Miller v. Shugart,* 316 N.W.2d at 734). Although St. Paul eventually agreed to provide Subotnik with a defense, it did so under a full reservation of rights to later deny coverage. Providing a defense under a full reservation of rights does not constitute acknowledgement of coverage. *See id.* Therefore, because St. Paul had not acknowledged coverage prior to Subotnik's unilaterally settling the claims with Vetter, Subotnik did not breach his duty to cooperate with St. Paul.

### 3. Agreement was not product of fraud and collusion.

St. Paul argues the settlement agreement is the product of fraud and collusion because Subotnik settled for an amount he believed to be unreasonable, failed to drive a hard bargain, and bargained for personal benefits. Such conduct does not constitute fraud or collusion.

Indeed, the courts have recognized that defendants entering into *Miller–Shugart* agreements are not likely to be motivated to drive a hard bargain and are likely to be motivated by personal benefits such as avoiding public exposure or embarrassment and avoiding claims, such as claims for punitive damages or emotional distress, which would not be covered by the insured's policy. *Alton M. Johnson Co. v. M.A.I. Co.,* 463 N.W.2d at 278; *S.G. v. St. Paul Fire &*

**1356**

Marine Ins. Co., 460 N.W.2d at 643–44. Nevertheless, the courts have never found that such conduct constituted fraud or collusion or should void the agreement or policy.

St. Paul fails to support its general allegations of fraud and collusion with even a scintilla of evidence. St. Paul offers no evidence suggesting Vetter and Subotnik contrived this whole matter to defraud them and unlawfully collect insurance benefits. Vetter and Subotnik entered into a typical *Miller–Shugart* agreement. If the Court were to accept St. Paul's argument as to fraud and collusion, it would essentially undermine all *Miller–Shugart* agreements.

*4. Coverage exists for insured's conduct.*

 The issue of coverage may be determined by the Court. The determination will not be overturned unless it is clearly erroneous. *Brownsdale Coop. Ass'n v. Home Ins. Co.*, 473 N.W.2d at 341.

In *St. Paul Fire & Marine Ins. Co. v. Love*, the Minnesota Court of Appeals held that the mishandling of the transference phenomenon in psychotherapy constitutes professional negligence within the meaning of a professional liability insurance policy. *Saint Paul Fire & Marine Ins. Co. v. Love*, 447 N.W.2d 5 (Minn.App.1989), *aff'd*, 459 N.W.2d 698 (Minn.1990).

Plaintiff Vetter submits substantial evidence supporting her position that Subotnik mishandled the transference and countertransference phenomena and that her injuries were a direct result of that mishandling. St. Paul, on the other hand, makes no argument and presents no evidence to the contrary. Therefore, St. Paul fails to meet its burden of establishing facts which create a genuine issue of material fact appropriate to send to a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12. Accordingly, the Court finds Subotnik's conduct constitutes professional malpractice and is covered as a matter of law.

### ORDER

Based upon the file, briefs and arguments, IT IS ORDERED:

(1) Plaintiff's motion for summary judgment is GRANTED; and

(2) Plaintiff is directed to bring a separate motion with supporting affidavits for attorneys' fees.